# EXHIBIT 1

## TABLE OF CONTENTS

Page

ARTICLE 1.
Demised Premises--Term of Lease..................... 1

ARTICLE 2.
Rent................................................ 2

ARTICLE 3.
Payment of Taxes, Assessments and Carrying Charges.. 3

ARTICLE 4.
Surrender........................................... 5

ARTICLE 5.
Insurance........................................... 6

ARTICLE 6.
Lessor's Right to Perform Lessee's Covenants....... 8

ARTICLE 7.
Repairs and Maintenance of the Demised Premises..... 9

ARTICLE 8.
Compliance with Laws, Ordinances and Regulations.... 10

ARTICLE 9.
Changes, Alterations and New Construction by Lessee. 11

ARTICLE 10.
Discharge of Liens.................................. 13

ARTICLE 11.
No Waste............................................ 14

ARTICLE 12.
Use of Demised Premises............................. 14

ARTICLE 13.
Entry on Demised Premises by Lessor, etc............ 14

ARTICLE 14.
Indemnification of Lessor........................... 15

ARTICLE 15.
Damage or Destruction............................... 16

ARTICLE 16.
Condemnation........................................ 20

ARTICLE 17.
Mortgages, Assignments, Subleases and Transfers of
Lessee's Interest................................. 21

RBG/11/12/71

INDENTURE OF LEASE                    (2)

THIS INDENTURE of Lease dated the /ˢᵗ day of December,
1971, by and between *Barcy Realty Company, a Pa Corp.*,
party of the first part, hereinafter referred to as "Lessor",
and GIRARD TRUST BANK a Pennsylvania banking corporation, having
its registered office at Bala and City Line Avenues, Bala Cynwyd,
Pennsylvania, 19004, party of the second part, hereinafter referred
to as "Lessee",

W I T N E S S E T H :

ARTICLE I

DEMISED PREMISES--TERM OF LEASE

Section 1.01.  That Lessor, for and in consideration
of the rents, covenants and agreements hereinafter reserved,
mentioned and contained on the part of Lessee, its successors
and assigns, to be paid, kept, observed and performed, has leased,
rented, let and demised, and by these presents does lease, rent,
let and demise, unto Lessee, and Lessee does hereby take and
hire, upon and subject to the conditions and limitations hereinafter
expressed, all that certain lot or piece of ground with the
buildings and improvements thereon erected, described in Exhibit
"A", attached hereto and made a part hereof;

TOGETHER with all and singular the ways, easements,
rights, privileges and appurtenances to the same belonging or
in any wise appertaining, and all the estate, right, title,
interest and claim, either at law or in equity, or otherwise
however, of Lessor of, in, to, or out of the said lot or piece
of ground;

Subject, However, to:

(1)  Discrepancies or conflicts in boundary lines,
easements, encroachments or area content which
a satisfactory survey would disclose.

(2)  Present and future zoning laws, ordinances, resolu-
tions and regulations of the City of Philadelphia
and all present and future ordinances, laws,
regulations and orders of all boards, bureaus,
commissions and bodies of any municipal, county,
state or federal sovereigns now or hereafter
having or acquiring jurisdiction of the property
hereby demised and the use and improvement thereof;

(3)  Violations of law, ordinances, orders or require-
ments that might be disclosed by an examination
and inspection or search of the property hereby
demised by any federal, state or municipal depart-
ments or authority having jurisdiction, as the
same may exist on the date of the commencement
of the term of this Lease, and which the Lessee
covenants and agrees to remove promptly;

RBG/11/12/71

Case 2:21-cv-03798-GJP   Document 1-4   Filed 08/25/21   Page 4 of 32



(4)  The condition and state of repair of the property
     hereby demised as the same may be on the date
     of the commencement of the term of this Lease;

(5)  All assessments, water meter and water charges
     and sewer rents, accrued, fixed or not fixed.

(6)  The objections to title set forth on Exhibit
     "B", attached hereto and made a part hereof.

The said lot or piece of ground, and the buildings
and improvements now or hereafter erected thereon, together
with the said ways, and estate, and subject to all matters and
things hereinabove set forth in subparagraphs (1) to (6), inclusive,
constitute and are hereinafter referred to as the "Demised Premises".

Section 1.02.  TO HAVE AND TO HOLD the Demised Premises,
subject as aforesaid, unto Lessee, and subject to the terms,
covenants, agreements, provisions, conditions and limitations
hereof, its successors and assigns for the term commencing on
the date hereof and ending upon the expiration of thirty (30)
years hereafter, unless this Lease shall sooner terminate as
hereinafter provided.

Section 1.03.  Provided Lessee is not then in default
hereunder, Lessee shall have the option of renewing this Lease
for three (3) successive terms of ten (10) years each by giving
written notice thereof to Lessor at least nine (9) months prior
to the expiration of the then current term.  Said renewal terms
shall be upon all of the terms, covenants and conditions as
the original term except for the provisions of this Section
1.03.

Section 1.04.  This Lease is made upon the following
terms, covenants, agreements, provisions, conditions and limitations,
all of which Lessor and Lessee, with respect to the same on
their respective parts to be accepted, kept, observed and performed,
covenant and agree to accept, keep, observe and perform:

ARTICLE 2

RENT

Section 2.01.  Lessee covenants and agrees to pay
Lessor at the address specified, pursuant to the provisions
of Section 20.01 of this Lease, a net basic annual rent of
(*140,114.00*) Dollars to be paid in equal
monthly installments of (*$3,342.83*) Dollars
on the first day of each calendar month in advance.  Said net
basic annual rent is herein sometimes referred to as "Net Rent".
Rent from the date hereof to the end of the current month shall
be apportioned and paid on the date hereof.  Rent payable on
the first day of the last month of the term hereof shall be
similarly apportioned.

Section 2.02.  The net rent shall be paid to Lessor
by Lessee without notice or demand and without abatement, deduc-
tion or set-off.

- 2 -

RBG/10/26/71



Section 2.03.  It is the purpose and intent of Lessor and Lessee that the net rent shall be absolutely net to the Lessor, so that this Lease shall yield, net to Lessor, the net rent specified in Section 2.01 hereof in each year during the term of this Lease and that all costs, operating expenses, Impositions, premiums, fees, interest, charges, expenses, reimbursements and obligations of every kind and nature whatsoever relating to the Demised Premises, excepting only certain taxes of Lessor as provided in Section 3.02 of Article 3 hereof, which may arise or become due during or out of the term of this Lease, shall be paid or discharged by the Lessee as additional rent, and that Lessor shall be indemnified and saved harmless by Lessee from and against such costs, operating expenses, Impositions, premiums, fees, interest, charges, expenses, reimbursements and obligations.

Section 2.04.  Lessee shall pay without notice, except as may be required in this Lease, and without abatement, deduction or set-off, as additional rent, all sums, Impositions (as defined in Article 3 hereof), costs, operating expenses, premiums, fees, interest, charges, expenses, obligations, reimbursements and other payments which Lessee in any of the provisions of this Lease assumes or agrees to pay or which Lessee agrees are to be at the expense of Lessee, and, in the event of non-payment thereof, Lessor shall have, in addition to all other rights and remedies, all the rights and remedies provided for herein and by law in the case of non-payment of the net rent.

ARTICLE 3

PAYMENT OF TAXES, ASSESSMENTS, AND CARRYING CHARGES.

Section 3.01.  Lessee shall pay or cause to be paid (except as hereinafter in Section 3.02 hereof provided), before any fine, penalty, interest or cost may be added thereto, all real estate taxes, assessments, sewer rents, water meter and water charges, excises, levies, license and permit fees, charges for public utilities and all other charges or burdens of whatsoever kind and nature, without particularizing by name, and whether any of the foregoing be general or special, ordinary or extraordinary or radical, foreseen or unforeseen, which at any time prior to or during the term of this Lease may have been, or may be assessed, levied, confirmed, imposed upon, or grow or become a lien on, the Demised Premises or any part thereof, or any appurtenance thereto, or any use or occupancy of the Demised Premises and Building, or such rights, obligations, easements, and franchises as may now or hereafter be appurtenant, or appertain, to the use of the Demised Premises, this transaction or any document to which Lessee is a party or successor in interest, creating or transferring an estate or interest in the Demised Premises, (all such real estate taxes, assessments, sewer rent, water meter and water charges, excises, levies, license and permit fees, and public utilities and all other charges or burdens of whatsoever kind and nature, being herein referred to as "Impositions", and any of the same being hereinafter referred to as an "Imposition"); provided, however, that any Imposition relating to a fiscal period of the taxing authority, a part of which period is included

- 3 -

RBG/11/12/71



within the term of this Lease and a part of which is included
in a period of time after the expiration of the term of this
Lease, shall, whether or not such Imposition shall be assessed,
levied, confirmed, imposed upon or in respect of or become a
lien upon the Demised Premises, or shall become payable, during
the term of this Lease, be adjusted between Lessor and Lessee
as of the expiration of the term of this Lease, so that Lessee
shall pay that portion of such Imposition which that part of
such fiscal period included in the period of time before the
expiration of the term of this Lease bears to such fiscal period,
and Lessor shall pay the remainder thereof, provided, however,
that Lessee shall not be entitled to receive any apportionment,
if Lessee shall be in default in keeping, observing or performing
any of the terms, covenants, provisions, conditions or limitations
of this Lease on Lessee's part to be kept, observed or performed,
as provided in this Lease or if Lessee shall exercise the option
to terminate this Lease pursuant to the provisions of subdivision
(b) of Section 15.03 of this Lease.

Section 3.02.  Nothing herein contained shall require
Lessee to pay municipal, state, or federal income or gross receipts
or excess profits taxes assessed against Lessor, or municipal,
state, or federal capital levy, estate succession, inheritance
or transfer taxes of Lessor, or corporation franchise taxes
imposed upon any corporate owner of the fee of the Demised Premises.

Section 3.03.  Lessee shall, at the request of Lessor,
furnish to Lessor within ten (10) days after the date when any
Imposition is required to be paid pursuant to Section 3.01 hereof,
receipts of the appropriate taxing or other authority, or other
dence satisfactory to Lessor, evidencing the payment thereof.

Section 3.04.  Lessee shall have the right to contest
the amount or validity, in whole or in part, of any Imposition
by appropriate proceedings diligently conducted in good faith,
in which event, notwithstanding the provisions of Section 3.01
and 3.03 hereof, Lessee may postpone or defer payment of such
Imposition if

(a)  neither the Demised Premises nor any part
thereof would by reason of such postponement or defer-
ment be in danger of being forfeited or lost, and

(b)  if requested by Lessor, Lessee shall have
deposited into an escrow account at Lessee or another
reputable bank (and delivered to Lessor a receipt and
acknowledgment that such fund will be held and applied
pursuant to the terms of this Section 3.04), the amount
so contested and unpaid, together with all interest
and penalties in connection therewith and all charges
that may or might be assessed against or become a
charge on the Demised Premises or any part thereof
in such proceedings.

If, during the continuance of such proceedings, Lessor shall
from time to time, deem the amount deposited, as aforesaid,
insufficient, the Lessee shall, upon demand, make additional
deposits of such additional sums as Lessor reasonably may request,
and, upon failure of Lessee so to do, the amounts theretofore
deposited may be applied by Lessor to the payment, removal and
discharge of such Imposition, and the interest and penalties
in connection therewith and any costs, fees, including counsel

- 4 -

(6)

fees, and any other liability accruing in any such proceedings.
Upon the termination of any such proceedings, Lessee shall pay
the amount of such Imposition or part thereof, if any, as finally
determined in such proceedings, the payment of which may have
been deferred during the prosecution of such proceedings, together
with any costs, fees, including counsel fees, interest, penalties
and any other liability in connection therewith.  Upon such
payment by Lessee, Lessor shall return, without interest, all
amounts deposited with it with respect to such Imposition as
aforesaid, less any such amounts paid by Lessor to satisfy the
Imposition in whole or in part according to the terms hereof,
or, at the written direction of the Lessee, the Lessor shall
make such payment, and the balance, if any, shall be returned
to the Lessee.  In lieu of a cash deposit Lessee may furnish
Lessor with other security reasonably satisfactory to Lessor.

        Lessee shall be entitled to any refund of any Imposition
and penalties and interest received thereon by Lessor which
have been paid by Lessor but for which Lessor has been previously
reimbursed in full by Lessee, provided this Lease is, at such
time, maintained in good standing.

        Section 3.05.  Lessor shall not be required to join
in any proceedings referred to in Section 3.04 hereof unless
the provisions of any law, rule or regulation, at the time in
effect shall require that such proceedings be brought by or
in the name of Lessor, in which event Lessor shall join in such
proceedings or permit the same to be brought in its name upon
compliance with such conditions as Lessor may reasonably require.
Lessor shall not ultimately be subjected to any liability for
the payment of any fees, including reasonable counsel fees,
costs or expenses in connection with such proceedings.  Lessee
agrees to pay all such fees, including reasonable counsel fees,
costs and expenses or, on demand, to make reimbursement to Lessor
for such payment.

        Section 3.06.  The certificate, advice or bill of
the appropriate official, designated by law to make or issue
the same or to receive payment of any Imposition or of non-
payment of such Imposition may be relied on by the Lessor as
sufficient evidence that such Imposition is due and unpaid or
has been paid at the time of the making or issuance of such
certificate, advice or bill.

                        ARTICLE 4

                        SURRENDER

        Section 4.01.  Lessee shall and will on the last day
of the term hereof or upon any earlier termination of this Lease,
or upon any entry or re-entry by Lessor upon the Demised Premises
pursuant to Article 18 hereof, well and truly surrender and
deliver up the Demised Premises into the possession and use
of Lessor without fraud or delay and, subject to the provisions
of subdivision (b) of Section 15.03 of this Lease, in good order,
condition and repair, reasonable wear and tear excepted, free
and clear of all lettings and occupancies other than subleases
and licenses then terminable at the option of the Lessor or

subleases and licenses, the continuance of which Lessor shall
have specifically and expressly permitted, and free and clear
of all liens and encumbrances other than those hereinabove men-
tioned or hereafter created by Lessor.

Section 4.02.  All fixtures, machinery and equipment
necessary for the general operation of the Demised Premises
(not specifically as a bank) shall, throughout the term of this
Lease, be the property of the Lessor and none of the same shall
be removed from the Demised Premises, excepting for purposes
of repair or replacement with similar or other equipment or
other arrangement equally suitable for continuance of such operation
of the Demised Premises.  Lessee shall keep and maintain such
fixtures, machinery and equipment at all times throughout the
term of this Lease in good and usable condition with all necessary
replacements thereof, sufficient for the general operation of
the Demised Premises and shall deliver the same in such condition
to Lessor as additional rent at termination of Lessee's tenancy
hereunder.

Section 4.03.  Any trade fixtures and equipment (including,
but not limited to banking and tellers' screens, signs and plaques,
vault, vault doors, lining and screens, money safes, alarms and
other protective devices, and night and drive-in depositories)
installed or used by Lessee in the operation of the Demised
Premises for the uses specified in Article 12 of this Lease
shall be the property of Lessee and, along with any other personal
property of Lessee or any sublessee which shall remain on the
Demised Premises, or any part thereof, after the termination
or expiration of this Lease and the removal of Lessee or such
Sublessee from the Demised Premises may, at the option of Lessor,
be deemed to have been abandoned by Lessee or such Sublessee
and either may be retained by Lessor as its property or be disposed
of, without accountability, in such manner as Lessor may see
fit.  Lessor agrees to obtain such waivers or consents as Lessee
reasonably request to protect Lessee's interest therein.
Lessee may remove all such items from the Demised Premises and
will remove any of such items at Lessor's request, upon expiration
or sooner termination of the term of this Lease, and will repair,
at its sole cost and expense, any damage resulting therefrom.

Section 4.04.  Lessor shall not be responsible for
any loss or damage occurring to any property owned by Lessee,
any sublessee, or any occupant.

Section 4.05.  The provisions of this Article 4 shall
survive any termination or expiration of this Lease, including
a termination pursuant to the provisions of subdivision (b)
of Section 15.03 of this Lease.


ARTICLE 5

INSURANCE

Section 5.01.  Lessee, at its sole cost and expense,
shall keep the Demised Premises and the furniture, furnishings,
fixtures, machinery and equipment therein, insured against loss
or damage by fire and against loss or damage by such other risks
now or hereafter embraced by "Extended Coverage", so called.

Such insurance shall be maintained by Lessee during
the entire term of this Lease for a sum not less than 80% of



the full insurable value of the Demised Premises and the furniture, furnishings, fixtures, machinery and equipment.

Section 5.02.  In addition to the insurance required Section 5.01 above, Lessee, at its sole cost, and expense shall purchase and maintain during the entire term of this Lease:

(a)  Comprehensive bodily injury and property damage liability insurance against claims for bodily injury, death or property damage, occurring in, on, or about the Demised Premises or the elevators or any escalator therein and on, in or about the adjoining streets, avenues, property and passageways, naming the Lessor and the Lessee as the insureds, such insurance to afford minimum protection, during the term of this Lease, of not less than Five Hundred Thousand and 00/100 Dollars ($500,000.00) in respect to bodily injury or death to any one person, and of not less than One Million Dollars ($1,000,000.00) in respect of any one accident and of not less than One Hundred Thousand and 00/100 Dollars ($100,000.00) for property damage.  Lessee shall obtain and maintain, at its sole cost and expense, such additional liability insurance and in such additional amounts as may be reasonably required by Lessor, from time to time.

(b)  Such other insurance insuring against such risks, in such amounts with such protective provisions as may be reasonably required from time to time by Lessor and Mortgagee of the fee if the same is customarily required for similar buildings or operations.

Section 5.03.  All insurance provided for in this Article 5 shall be effected under valid and enforceable policies issued by insurers of recognized responsibility which are licensed to do business in the Commonwealth of Pennsylvania and which have been approved in writing by Lessor and Mortgagee of the fee of the Demised Premises, as to the qualifications of insurers and the amounts of insurance to be written by each.  Upon the execution of this Lease, and thereafter not less than twenty (20) days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this Article 5 originals of the policies, or certificates thereof in the case of bodily injury and property damage liability insurance or in the case of casualty insurance written under a blanket policy, bearing notations evidencing the payment of premiums or accompanied by other evidence of such payment, shall be delivered by Lessee to the person or entity entitled to approve any insurance company as provided above in this Section.

Section 5.04.  The proceeds of any insurance required to be maintained by the provisions of Section 5.01 and 5.02 (b) and (c) shall be payable to:

1.  Lessee in the case of any particular casualty resulting in damage or destruction not exceeding in the aggregate Fifteen Thousand and 00/100 Dollars ($15,000.00) exclusive of Lessee's trade fixtures and equipment as described in Section 4.03 hereof, which proceeds shall be received in trust for the purposes of paying the cost of restoration free from mechanics and other liens;

2.   Mortgagee of the fee (as hereinafter defined in Section 17.06) or if there is no Mortgagee of the fee, then Lessee or another bank with a construction loan department (at Lessee's sole cost and expense), in case of any particular casualty resulting in damage or destruction exceeding in the aggregate Fifteen Thousand and 00/100 Dollars ($15,000.00) exclusive of Lessee's trade fixtures and equipment as described in Section 4.03 hereof, which proceeds are to be held and disposed of pursuant to, and under the conditions set forth in, Article 15 of this Lease.

Section 5.05.  Each policy, hereinabove in this Article 5 mentioned and required, shall to the extent obtainable, have attached thereto (a) an endorsement that such policy shall not be cancelled or materially changed without at least ten (10) days' prior written notice to the Lessor and Mortgagee of the fee; and (b) an endorsement to the effect that no act or omission of the Lessee shall invalidate the interest of such person or entity entitled to such notice.

## ARTICLE 6

### LESSOR'S RIGHT TO PERFORM LESSEE'S COVENANTS

Section 6.01.  If Lessee shall at any time fail to pay any Imposition, in accordance with the provisions of Article 3 hereof, or to take out, pay for, maintain and deliver any of the insurance policies provided for in Article 5 hereof, after ten (10) days' notice to Lessee (or without notice in case of an emergency), or shall fail to make any other payment or begin to perform any other act on its part to be made or performed within twenty (20) days after notice to Lessee (or without notice in the case of an emergency) and pursue such performance with due diligence, then Lessor, subject to Lessee's reasonable security requirements and without waiving, or releasing Lessee from, any obligation of Lessee contained in this Lease, may, but shall be under no obligation to--

(a)   pay any imposition payable by Lessee pursuant to the provisions of Article 3 hereof, or

(b)   take out, pay for and maintain any of the insurance policies provided for in Article 5 hereof, or

(c)   make any other payment or perform any other act on Lessee's part to be made or performed as in this Lease provided; and may enter upon the Demised Premises for any such purpose, and take all such action thereon, as may be necessary therefor; provided that Lessor shall take no such action if Lessee has paid such Imposition and given notice to Lessor prior to such action.

Section 6.02.  All sums so paid by Lessor and all costs and expenses, including reasonable attorney's fees, incurred by Lessor in connection with the performance of any such act,

together with interest thereon at the rate of one-half per cent
(1/2%) per annum over the then prime rate in Philadelphia from
the respective dates of Lessor's making of each such payment
or incurring of each such cost and expense, including reasonable
attorney's fees, shall be paid by Lessee to Lessor on demand,
and Lessor shall not be limited in proof of any damages which
Lessor may claim against Lessee arising out of or by reason
of Lessee's failure to provide and keep in force insurance as
aforesaid, to the amount of the insurance premium or premiums
not paid or incurred by Lessee and which would have been payable
upon such insurance, but Lessor shall also be entitled to recover
as damages for such breach, the uninsured amount of any loss
(to the extent of any deficiency in the insurance required by
the provisions of this Lease), damages, costs and expenses
of suit, including reasonable counsel fees, suffered or incurred
by reason of damage to, or destruction of, the Demised Premises
or any part thereof, occurring during any period when Lessee
shall have failed or neglected to provide insurance as aforesaid.
Upon the expiration of this Lease, the unearned premiums upon
any such transferable insurance policies issued pursuant to
the terms of this Lease shall be apportioned only if Lessee
shall not then be in default in keeping, observing or performing
any of the terms, covenants, agreements, provisions, conditions
or limitations contained in this Lease on Lessee's part to be
kept, observed or performed.

     Section 6.03.  Under no circumstances shall either
the exercise by Lessor of the right granted in this Article
6 to enter upon the Demised Premises for any purpose specified
herein and take all such action thereon as may be necessary
therefor, or the exercise of any other right or remedy granted
to Lessor under Article 18 of this Lease or any other provision
of this Lease to cure, prevent or take any other action with
respect to any default by Lessee, constitute an eviction of
Lessee, result in a termination of this Lease, or in any manner
whatsoever relieve Lessee from liability to pay net rent and
additional rent as in this Lease provided or from the keeping,
observance and performance of any other covenant, condition
and agreement on the part of Lessee to be kept, observed and
performed under this Lease.

     The exercise of any such right by Lessor shall not
alter, abridge, supersede or otherwise affect the obligations
of Lessor under this Lease to give any notice required by Articles
18 or 19 or under any other provisions of this Lease.

     The provisions of this Section 6.03 shall have no
application to Lessor's right to terminate this Lease pursuant
to notice of termination given under Article 18 of this Lease
or to Lessor's rights to enter, re-enter or to obtain possession
of the Demised Premises following termination of this Lease
in accordance with the provisions hereof.

ARTICLE 7

REPAIRS AND MAINTENANCE OF THE DEMISED PREMISES

     Section 7.01.  Throughout the term of this Lease,
Lessee, at its sole cost and expense, shall take good care of

- 9 -

t● emised Premises and shall keep the same in good order and
c●●tion, and make all necessary repairs thereto, interior
and exterior, structural and non-structural, ordinary and extra-
ordinary or radical, foreseen and unforeseen.  When used in
this Article 7, the term "repairs" shall include all necessary
replacements, renewals and alterations.  All repairs made by
Lessee shall be at least equal in quality and class to the original
work.  Lessee shall comply with all laws and ordinances with
respect thereto and do every other act or thing for the safety
and preservation thereof which may be necessary by reason of
any excavation, subsurface construction, remodeling or other
building operation upon any adjoining property or street, avenue,
alley, or passageway.

Section 7.02.  Lessee shall put, keep and maintain
all portions of the Demised Premises; and the sidewalks, curbs,
entrances, passageways and all areas adjoining the same in a
clean and orderly condition, free of dirt, rubbish, snow, ice,
and unlawful obstructions.

Section 7.03.  Lessor shall not be required to furnish
any services or facilities or to make any repairs or alterations
in or to the Demised Premises.  Lessee hereby assumes the full
and sole responsibility for the condition, operation, repair,
replacement, maintenance and management of the Demised Premises.

ARTICLE 8

COMPLIANCE WITH LAWS, ORDINANCES AND REGULATIONS

Section 8.01.  Throughout the term of this Lease,
Lessee, at its sole cost and expense, shall promptly remove
a● violation and shall promptly comply with all present and
f●●●e laws, ordinances, orders, rules, regulations and require-
ments of all federal, state, and municipal governments, courts,
departments, commissions, boards any national or local Insurance
Rating Bureau, or any other body exercising functions similar
to those of any of the foregoing, radical, foreseen or unforeseen,
ordinary as well as extraordinary, which may be applicable to
the Demised Premises, or any part thereof, or the sidewalks,
curbs, vaults, passageways, alleys, entrances, coverings or
rooflike structures placed upon or extending over any sidewalk,
or any space adjacent thereto, or to the use or manner of use
of the Demised Premises, or any part thereof, or the owners,
lessees or occupants thereof, whether or not any such law, ordinance,
order, rule, regulation or requirement shall necessitate radical
structural changes, additions, or improvements, or the removal
of any structure, encroachment or projections, ornamental or
structural, onto or over the streets adjacent to the Demised
Premises, or onto or over property contiguous or adjacent thereto,
and whether or not the correction or removal so necessitated
shall have been foreseen or unforeseen or when ·- the same shall
involve radical or extraordinary construction . other disposition.

Section 8.02.  Lessee shall likewise observe and comply
with, or shall cause to be observed and complied with, all the
requirements of all policies of public liability, fire and other
insurance at any time in force with respect to the Demised Premises.

Section 8.03. Lessee shall have the right, after prior written notice to Lessor, to contest by appropriate legal proceedings, diligently conducted in good faith, in the name of Lessee or Lessor or both, without cost or expense to Lessor, the validity or application of any law, ordinance, order, rule, regulation or requirement of the nature referred to in Section 8.01 hereof, subject to the following:

(a) If by the terms of any such law, ordinance, order, rule, regulation or requirement, compliance therewith pending the prosecution of any such proceeding may legally be delayed without the incurrence of any lien, charge, liability or penalty of any kind against the Demised Premises or Lessee's leasehold interest therein and without subjecting Lessor to any liability, civil or criminal, for failure so to comply therewith, Lessee may delay compliance therewith until the final determination of such proceeding.

(b) If any lien, charge or civil liability would be incurred by reason of any such delay, Lessee nevertheless, on the prior written consent of Lessor (such consent not to be unreasonably withheld), may contest as aforesaid and delay as aforesaid, provided that such delay would not subject Lessor to criminal liability and Lessee, upon request by Lessor, (1) furnishes security, reasonably satisfactory to Lessor against any loss or injury by reason of such contest or delay, the same to be placed into an escrow account at Lessee or another reputable bank (and delivers to Lessor a receipt and acknowledgment that such security will be held and applied pursuant to the terms of this Section 9.01, and (2) prosecutes the contest with due diligence and in good faith.

Lessor shall, at Lessee's sole cost and expense, including reasonable counsel fees, execute and deliver any appropriate papers which may be necessary or proper to permit Lessee to contest the validity or application of any such law, ordinance, order, rule, regulation or requirement.


ARTICLE 9

CHANGES, ALTERATIONS AND NEW CONSTRUCTION BY LESSEE

Section 9.01. Lessee shall have the right any time and from time to time during the term of this Lease, to make, at its sole cost and expense, changes and alterations in, to or of the Demised Premises, subject, however, in all cases to the following:

(a) No structural change or alteration involving in the aggregate an estimated cost of more than Twenty-five Thousand and 00/100 Dollars ($25,000.00) shall be undertaken except after ten (10) days' prior written notice to Lessor and Mortgagee of the fee.

(b) No structural change or alteration, involving in the aggregate an estimated cost of more than Twenty-five Thousand and 00/100 Dollars ($25,000.00), including any such change or alteration in connection with any

- 11 -

RBG/11/12/71

restoration required by Article 15 or 16 hereof, shall
be made without the prior written consent of Lessor
and Mortgagee of the fee, such consent of Lessor not
to be unreasonably withheld or delayed.

(c)  No change or alteration shall be undertaken
until Lessee shall have procured and paid for, so
far as the same may be required from time to time,
all permits and authorizations of any federal, state,
or municipal government or departments, or sub-divisions
of any of them, having jurisdiction.  Lessor shall
join in the application for such permits or authoriza-
tions whenever such action is necessary

(d)  Any change or alteration shall, when completed,
be of such a character as not to reduce the value
and utility of the Demised Premises below its value
and utility immediately before such change or alteration.

(e)  Any change or alteration shall be made promptly
(unavoidable delays excepted) and in good and workmanlike
manner and in compliance with all applicable permits
and authorizations and building and zoning laws and
with all other laws, ordinances, orders, rules, regula-
tions and requirements of all federal, state, and
municipal governments, departments, commissions, boards
and officers, any national or local Insurance Rating
Bureau, or any other body hereafter exercising functions
similar to those of any of the foregoing.

(f)  The cost of any such change or alteration
shall be paid in cash or its equivalent, so that the
Demised Premises shall at all times be free of liens
for labor and materials supplied or claimed to have
been supplied to the Demised Premises and free from
any encumbrances, chattel mortgages, conditional bills
of sale, or security interests, except any Mortgage
on the fee.

(g)  Whenever appropriate the fire insurance
with "Extended Coverage", as required to be maintained
during the term of this Lease in Section 5.01 of Article
5 hereof, shall be adapted to provide, during any
period of building construction, for Builder's Risk
Insurance written on the Completed Value form.  Work-
men's compensation insurance covering all persons
employed in connection with the work and with respect
to whom death or bodily injury claims could be asserted
against Lessor, Lessee or the Demised Premises, and
general liability insurance, including as the insured
Lessee and Lessor with limits of not less than Five
Hundred Thousand and 00/100 Dollars ($500,000.00)
in the event of bodily injury or death to one person
and not less than One Million Dollars 00/100 ($1,000,000.00)
in the event of bodily injury or death to any number
of persons in any one accident and with limits of
not less than One Hundred Thousand and 00/100 Dollars
($100,000.00) for property damage, shall be maintained
by Lessee at Lessee's sole cost and expense at all
times when any work is in process in connection with
any change or alteration; provided, however, that
the above minimum limits shall not be less than those
then being required pursuant to the provisions of

- 12 -

Article 5 of this Lease. All such workmen's compensation and liability and property damage insurance shall be in company or companies of recognized responsibility, which are licensed to do business in the Commonwealth of Pennsylvania and which have been approved in writing by the Lessor as to the qualifications of the insurers and the amounts of insurance to be written by each, such approval not to be unreasonably withheld, and all policies, or, in the case of bodily injury and property damage liability insurance, certificates thereof, issued by the respective insurers, bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Lessor of such payment, shall be delivered to Lessor.

ARTICLE 10

DISCHARGE OF LIENS

Section 10.01. Lessee shall not create or permit to be created or to remain, and shall discharge, any lien, encumbrance or charge (levied on account of any Imposition or any mechanic's, laborer's or materialman's lien or any mortgage, conditional sale, title retention agreement, security interest or chattel mortgage, or otherwise) which might be or become a lien encumbrance or charge upon the Demised Premises any part thereof or the income therefrom, having any priority or preference over or ranking on a parity with the estate, rights and interest of Lessor in the Demised Premises or any part thereof or the income therefrom, and Lessee shall not suffer any other matter or thing whereby the estate, rights and interest of Lessor in the Demised Premises or any part thereof or the income therefrom might be impaired; provided that any Imposition may, after the same becomes a lien on the Demised Premises, be paid or contested in accordance with Article 3 of this Lease and any mechanic's, laborer's or materialman's lien may be discharged or contested in accordance with Section 10.02 of this Article 10.

Section 10.02. If any mechanic's, laborer's or materialman's lien shall at any time be filed against the Demised Premises or any part thereof, Lessee, within thirty (30) days after notice of the filing thereof, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise or may contest such claim as provided in the Mechanics' Lien Law. If Lessee shall fail to cause such lien to be discharged within the period aforesaid, unless it is contesting such lien, then, in addition to any other right or remedy, Lessor may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event Lessor shall be entitled, if Lessor so elects, and Lessee, in the name of Lessor shall be entitled, to compel the prosecution of an action for the enforcement of such lien by the lienor and to pay the amount of the judgment in favor of the lienor with interest, costs and allowances. Lessee agrees to reimburse and to pay to the Lessor on demand any amount so paid by Lessor and all costs and expenses, including reasonable attorney's fees, incurred by Lessor in connection therewith, together with interest thereon at the rate of one-half percent (1/2%) per annum over the then prime rate in Philadelphia from the respective dates of Lessor's notice to Lessee of the making of the payment or the incurring of the cost and expense, including such attorney's fees.

Section 10.03. Nothing in this Lease contained shall
be deemed or construed in any way as constituting the consent
or request of Lessor, express or implied, by inference or other-
e, to any contractor, sub-contractor, laborer or materialman
the performance of any labor or the furnishing of any materials
for any specific improvement, alteration to, or repair of the
Demised Premises or any part thereof or for the demolition or
the replacement of the Demised Premises or any part thereof.

## ARTICLE 11

### NO WASTE

Section 11.01. Lessee shall not do or suffer any
waste or damage, disfigurement or injury to the Demised Premises
and the Building or any part thereof.

## ARTICLE 12

### USE OF DEMISED PREMISES

Section 12.01. Lessee may use the Demised Premises
for any lawful purpose; provided, however, the use and identity
of any assignee or sublessee shall be subject to approval as set
forth in Section 17.01 below.

Section 12.02. Lessee shall not suffer or permit
the Demised Premises or any portion thereof, to be used by
the public, as such, without restriction or in such manner as
might reasonably tend to impair Lessor's title to the Demised
Premises or any portion thereof, or in such manner as might
reasonably make possible a claim or claims of adverse usage
or adverse possession by the public, as such, or of implied
dedication of the Demised Premises or any portion thereof.

## ARTICLE 13

### ENTRY ON DEMISED PREMISES BY LESSOR, ETC

Section 13.01. Subject to Lessee's reasonable security
requirements and in addition to Lessor's right of entry under
any other provision of this Lease, Lessee shall permit Lessor
and its authorized representatives to enter the Demised Premises
at all reasonable times for the purpose of (a) inspecting the
same and (b) making any necessary repairs thereto and performing
any work therein that may be necessary by reason of Lessee's
failure to make any such repairs or perform any such work or
to commence the same for twenty (20) days after written notice
from Lessor and thereafter proceed with due diligence or without
notice in case of an emergency. Nothing herein contained shall
create or imply any duty upon the part of Lessor to make any
such repairs or do any such work; and performance thereof by
Lessor shall not constitute a waiver of Lessee's default in
failing to perform the same.

Section 13.02. Lessor may during the progress of
any work in the Demised Premises and Building keep and store
therein or elsewhere upon the Demised Premises and Building
all necessary materials, tools, supplies and equipment. Lessor

- 14 -

shall not be liable for inconvenience, annoyance, disturbance,
loss of business or other damage of Lessee or any sublessee
by reason of making such repairs or the performance of any such
work, or on account of bringing materials, tools, supplies and
equipment into or through the Demised Premises and Building
during the course thereof and the obligations and liabilities
of Lessee under this Lease shall not be affected or released
thereby, unless Lessor unreasonably interferes with Lessee's
use and occupancy of the Demised Premises under the circumstances.
In making any such repairs or performing any such work, however,
Lessor shall proceed with a minimum of inconvenience to the
Lessee or the subtenants of the Lessee.

        Section 13.03.  Lessor shall have the right to enter
the Demised Premises and Building at all reasonable times during
usual business hours for the purpose of showing the same:  (i)
to prospective purchasers at any time, or (ii)  to prospective
lessees at any time during the last year of the term of this
Lease or any renewal term hereof.

## ARTICLE 14

### INDEMNIFICATION OF LESSOR

        Section 14.01.  Notwithstanding any provision to the
contrary contained in this Lease, Lessee shall indemnify and
save harmless Lessor against and from all liabilities, obligations,
damages, penalties, claims, costs, charges and expenses, including
reasonable architects' and attorneys' fees, which may be imposed
upon or incurred by or asserted against Lessor by reason of
any of the following occurring during the term of this Lease:

        (a)  any work or thing done in, on or about the
Demised Premises or any part thereof;

        (b)  any use, non-use, possession, occupation,
condition, operation, maintenance or management of
the Demised Premises or any part thereof or any street,
avenue, alley, sidewalk, curb, passageway entrances,
or space adjacent thereto;

        (c)  any negligence on the part of Lessee or
any of its agents, contractors, servants, employees,
licensees, or invitees;

        (d)  any accident, injury or damage to any person
or property occurring in, on or about the Demised
Premises or any part thereof or any street, avenue,
alley, sidewalk, curb, passageway, entrances, or space
adjacent thereto;

        (e)  any failure on the part of Lessee to keep,
observe and perform any of the terms, covenants, agree-
ments, provisions, conditions or limitations contained
in this Lease on Lessee's part to be kept, observed
and performed; or

        (f)  any tax attributable to the execution, delivery
or recording of this Lease, or any amendment thereof.

In case any action or proceeding is brought against Lessor by reason of any such claim, Lessee upon written notice from Lessor shall at Lessee's sole cost and expense, including counsel fees, resist or defend such action or proceeding by counsel approved by Lessor in writing, such approval not to be unreasonably withheld, but no approval of counsel shall be required in each and every instance where the claim is resisted or defended by counsel of an insurance carrier obligated so to resist or defend such claim.

## ARTICLE 15

### DAMAGE OR DESTRUCTION

Section 15.01.  In case of damage to or destruction of the Building by fire or other casualty, Lessee, at Lessee's sole cost and expense, whether or not the insurance proceeds, if any, shall be sufficient for the purpose, and irrespective of the amount of any loss, shall restore, repair, replace, rebuild or alter the same as nearly as possible to its value, condition and character immediately prior to such damage or destruction or with such changes or alterations as may be made at Lessee's election in conformity with and subject to the conditions of Section 9.01 hereof.  Such restoration, repairs, replacements, rebuilding or alterations shall be commenced with due diligence, and in good faith, and prosecuted with due diligence and in good faith, unavoidable delays excepted.  In the event of damage to or the destruction of the Demised Premises resulting in a loss exceeding in the aggregate Fifteen Thousand and 00/100 Dollars ($15,000.00) exclusive of Lessee's trade fixtures and equipment as described in Section 4.03 above, Lessee shall promptly give written notice thereof to the Lessor.

Section 15.02.  All insurance money paid pursuant to Articles 5 and 9 of this Lease on account of such damage or destruction, less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, and any amount deposited for demolition and reconstruction pursuant to the provisions of Section 9.02 of this Lease, shall be applied to the payment of the cost of the aforesaid demolition, restoration, repairs, replacement, rebuilding or alterations, including the cost of temporary repairs or the protection of property pending the completion or permanent restoration, repairs, replacements, rebuilding or alterations (all of which temporary repairs, protection of property and permanent restoration, repairs, replacement, rebuilding or alterations are hereinafter collectively referred to as the "restoration"), and shall be paid out from time to time as such restoration progresses upon the written request of Lessee which shall be accompanied by the following:

(1)  A certificate signed by Lessee, dated not more than thirty (30) days prior to such request, setting forth the following:

(a)  That the sum then requested either has been paid by Lessee, or is justly due to contractors, sub-contractors, materialmen, engineers, architects or

KBG/11/12/71

other persons who have rendered services or furnished
materials for the restoration therein specified, the
names and addresses of such persons, a brief descrip-
tion of such services and materials, the several amounts
so paid or due to each of said persons in respect
thereof, that no part of such expenditures has been
or is being made the basis, in any previous or then
pending request, for the withdrawal of insurance money
or has been made out of the proceeds of insurance
received by Lessee, and that the sum then requested
does not exceed the value of the services and materials
described in the certificate.

(b)   That, except for the amount, if any, stated
(pursuant to the foregoing subclause (1)(a) in such
certificate to be due for services or materials, there
is no outstanding indebtedness known to the persons
signing such certificate, after due inquiry, which
is then due for labor, wages, materials, supplies
or services in connection with such restoration which,
if unpaid, might become the basis of a vendor's, mechanic's,
laborer's or materialman's statutory or similar lien
upon such restoration or upon the Demised Premises
or any part thereof or upon Lessee's leasehold interest
therein.

(c)   That the cost, as estimated by the persons
signing such certificate, of the restoration required
to be done subsequent to the date of such certificate
in order to complete the same, does not exceed the
insurance money, plus any amount deposited by Lessee
to defray such cost and remaining in the hands of
the holder of such funds after payment of the sum
requested in such certificate.

(2)   An opinion of counsel selected by the Lessee,
title search, or other evidence satisfactory
to Lessor, and Mortgagee of the fee, to the effect
that there has not been filed with respect to
the Demised Premises or any part thereof or upon
Lessee's leasehold interest therein any vendor's,
mechanic's, laborer's, materialman's or other
similar lien which has not been discharged of
record, except such as will be discharged by
payment of the amount then requested.

(3)   Whenever such restoration shall involve the con-
struction of any foundation wall or any building
wall, evidence, during the course of such con-
struction, by survey and a survey reading thereon,
made by a duly licensed surveyor, that there
are, as a result of such construction, no encroach-
ments on adjoining property objectionable to
Lessor and Mortgagee of the fee, no encroachments
on any street or avenue objectionable to Lessor,
and Mortgagee of the fee, and no physical conditions
that would render title to the Demised Premises
unmarketable.

(4) Evidence satisfactory to Lessor, and Mortgagee of the fee, of compliance with the provisions of Article 9 of this Lease, relative to changes and alterations.

In the event that any such restoration involves expenditures in excess of Fifteen Thousand and 00/100 Dollars ($15,000.00) exclusive of Lessee's trade fixtures and equipment as described in Section 4.03 above, the Certificate required by clause (1) of this Section 15.02 shall be a certificate signed by the architect or engineer in charge of the restoration, if any, who shall be selected by Lessee and approved in writing by Lessor, and Mortgagee of the fee.

Upon compliance with the foregoing provisions of this Section 15.02, there shall, out of such insurance money, be paid or caused to be paid to Lessee or the persons named (pursuant to subclause (1)(a) of this Section 15.02) in such certificate, the respective amounts stated therein to have been paid by Leasee or to be due to them, as the case may be.

If the insurance money at the time available for distribution, less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be insufficient to pay the entire cost of such restoration, Lessee shall pay the deficiency without delay.

Upon the receipt by Lessor and Mortgagee of the fee, of satisfactory evidence, of the character required by clauses (1), (2), (3) and (4) of this Section 15.02, that the restoration has been fully completed and paid for in full and that there are no liens of the character referred to therein, any balance of the insurance money at the time available for distribution shall be paid to Lessee; unless, at such time, Lessee is in default under any condition, agreement or covenant in this Lease unless this Lease has been terminated pursuant to the provisions Section 15.03 of this Lease, in any of which events such balance of the insurance money shall be paid to Lessor and Mortgagee of the fee.

Section 15.03. If the Demised Premises shall be damaged or destroyed by fire or other casualty within three (3) years prior to the expiration of the term of this Lease, and the cost of restoration exceeds the sum of Fifteen Thousand and 00/100 Dollars ($15,000.00) exclusive of Lessee's trade fixtures and equipment as described in Section 4.03 above, as estimated by a licensed architect or a licensed professional engineer, selected by Lessee and approved in writing by the Lessor (such approval not to be unreasonably withheld and, if Lessor fails to act thereon within ten (10) days from time of receipt thereof, Lessor shall be deemed to have approved Lessee's selection) Lessee shall have the option of

(a) restoring, repairing, replacing, rebuilding or altering the Building as provided in this Lease, or

(b) terminating this Lease by written notice to Lessor given within sixty (60) days after such destruction or damage; provided

(1) the applicable insurance shall be valid and subsisting and adequate to cover such destruction or damage without any defenses to the payment thereof by the insurance carriers based upon acts or omissions of Lessee;

- 18 -

(2)   Lessee shall have timely and in good faith
instituted, and thereafter shall have been busily
engaged in prosecuting with continuity, all work neces-
sary to protect and secure the occupants of the Building
and the public from and against injury to persons
and property; and if any note or notice of violation
of any city, state, or federal law, ordinance, order
or requirement, shall have been noted in or issued
by a city, state, or federal government or departments
thereof, having jurisdiction, against or affecting
the Demised Premises or any part thereof as a result
of such damage or destruction by fire or other casualty,
Lessee shall have timely and in good faith instituted,
and thereafter shall have been engaged in prosecuting
with continuity all work necessary to comply with
any such note or notice; and the insurance proceeds
shall be used by the Lessor to the extent necessary
to defray, or to make reimbursement for, the reasonable
expense of such temporary repairs for such temporary
repairs for such protection of the occupants of the
Demised Premises and the public from and against injury
to persons and property and the reasonable expense
of the curing of any such violation resulting from
such damage or destruction; provided, however, as
a condition precedent to such defrayment or such reimbursement,
Lessee shall have furnished to Lessor a certificate
signed by Lessee setting forth that the sum requested
either has been paid by Lessee or is justly due to
contractors, sub-contractors, materialmen, engineers
or other persons who have rendered services or furnished
materials in connection with such temporary repairs
or the curing of such violation as therein specified,
the names and addresses of such persons, a brief description
of such services and materials the several amounts
so paid or due to each of such persons with respect
thereto, and that the sum requested does not exceed
the reasonable value of the services and materials
described in the certificate;

(3)   this Lease at the time of such election
to terminate is unencumbered by any mortgages, judgments
or other liens created or suffered by Lessee (to be
evidenced by a search of a title company reasonably
acceptable to the Lessor and to be furnished by the
Lessee at Lessee's sole cost and expense), free from
any defaults and free from any pending matters that
might develop into additional rents unless the Lessee
shall secure the payment of such additional rents
to the Lessor in a manner satisfactory to Lessor and,
except as to those items of additional rents specified
in subdivision (d), Section 5.02 of this Lease, to
the extent of their then coverage by valid and subsisting
rent or rental value insurance;

(4)   there are no tenants or occupants of the
Building whose rights will continue after termination
except for those approved by Lessor and with respect to
whom Lessor has specifically approved such rights con-
tinuing after termination.

In the event of such termination, Lessee, except for
reimbursement to the extent set forth above in subdivision (2)

of subparagraph (b) of this Section 15.03, shall not be entitled
to any portion of the proceeds of any insurance, including but
not limited to, the fire insurance, all of which shall become
the sole property of the Lessor, except to the extent otherwise
provided in Articles 5 and 15 hereof.

At the time of such termination Lessee shall at once
surrender and deliver up the Demised Premises and the fixtures,
machinery and equipment therein into the possession and use
of Lessor and remove without fraud or delay all of its trade
fixtures and personal effects unrelated to the operation of
the Demised Premises. Lessee upon such termination, surrender
and removal, shall except as provided in this Section 15.03,
be released and discharged from any and all obligations that
would have otherwise thereafter accrued had this Lease not been
so terminated.

Section 15.04. Except as provided in Section 15.03
hereof, no destruction of, or damage to, the Demised Premises
or any part thereof by fire or any other casualty shall permit
Lessee to surrender this Lease or shall relieve Lessee from
its liability to pay the full net rent and additional rent payable
under this Lease, or from any of its other obligations under
this Lease, and Lessee waives any rights now or hereafter conferred
upon it by statute or otherwise to quit or surrender this Lease
or the Demised Premises or any part thereof, or to any suspension,
diminution, abatement or reduction of rent on account of any
such destruction or damage.

## ARTICLE 16

### CONDEMNATION

Section 16.01. In the event the Demised Premises
or any part thereof shall be taken or condemned for a public
or quasi-public use, rent shall abate in proportion to the square
feet of leased ground so taken. If by reason of such taking, in
Lessee's reasonable judgment the Demised Premises are no longer
suitable for the use then being made of the Demised Premises,
Lessee may terminate this Lease by giving written notice thereof
to Lessor (which notice will set forth in detail the reasons for
such termination) within thirty (30) days after the date of such
taking.

Section 16.02. In the event of any such taking, in
whole or in part, Lessee waives unto Lessor, Mortgagee of the
fee and the condemning authority any and all damages or awards
for such taking and any award or compensation shall belong to
and be paid to Lessor. Notwithstanding the aforesaid, any award
for the taking of Lessees personal property or for Lessee's
cost of moving or any other award shall be payable to Lessee
provided the same does not diminish the award otherwise payable
to the Lessor or Mortgagee of the fee.

The foregoing provisions of this Section are subject
to the following provisions in favor of Lessor, and Mortgagee
of the fee of the Demised Premises.

Lessor and Mortgagee of the fee of the Demised Premises,
shall be entitled to receive, to collect directly from the con-
demnor, and to retain the entire award or awards, with interest
thereon (Lessee's interest in any such award or awards being
expressly hereby assigned to Lessor), and Lessee hereby agrees

to execute such further assignments as may be required by any
condemning authority to assure payment of the entire award or
⬤ds to Lessor.

Any amounts so paid to Lessor to which Lessee is entitled
hereunder, shall be paid to Lessee.

## ARTICLE 17

### MORTGAGES, ASSIGNMENTS, SUBLEASES AND
### TRANSFERS OF LESSEE'S INTEREST

Section 17.01.  The Lessee may not assign this Lease,
either in whole or in part, or lease, sublease or mortgage the
Demised Premises or leasehold interest of the Lessee, or any
part or parts thereof without the prior written consent of Lessor,
which consent will not be unreasonably withheld.  No such assignment,
lease or sublease, shall relieve Lessee from its obligations
in this Lease contained.  Any assignee or transferee shall,
at the time of such assignment or transfer, assume, by agreement
in writing acceptable to Lessor, all the terms, covenants and
conditions of this lease thereafter to be performed by the Lessee
and shall agree to be bound thereby.  A merger of Lessee with another
entity shall not be deemed an assignment hereunder.

Section 17.02.  Lessee shall keep, observe and perform
each and every term, covenant, agreement, provision, condition
and limitation to be kept, observed and performed by the Lessee
as landlord or as sublessor under all present or future subleases
and shall and does hereby indemnify and agree to hold Lessor
harmless from any and all liabilities, claims and causes of
action arising thereunder.

## ARTICLE 18

### CONDITIONAL LIMITATIONS--DEFAULT PROVISIONS

Section 18.01.  If any one or more of the following
events (in this Lease sometimes called "Events of Default")
shall happen:

(a)  if default shall be made, whether by operation
of law or otherwise, by selling, assigning or transferring
or in any way disposing of this Lease or of the interest
of the Lessee thereunder except as provided in Article
17 of this Lease;

(b)  if default shall be made in the due and
punctual payment of any net rent or additional rent
payable under this Lease or any part hereof when and
as the same shall become due and payable, and such
default shall continue for a period of Ten (10) days
after written notice thereof from Lessor to Lessee;

(c)  if default shall be made by Lessee in keeping,
observing or performing any of the terms, covenants,
agreements, provisions, conditions or limitations
contained in this Lease on Lessee's part to be kept,
observed or performed, other than those referred to
in the foregoing subdivisions (a) and (b) of this
Section, which do not expose the Lessor to criminal
liability, and such default shall continue for a period
of twenty (20) days after written notice thereof from

- 21 -

RBG/11/12/71

Lessor to Lessee, or in the case of such a default
or a contingency which cannot with due diligence and
in good faith be cured within twenty (20) days, and
the Lessee fails to proceed promptly and with due
diligence and in good faith to cure the same and thereafter
to prosecute the curing of such default with due diligence
and in good faith (it being intended that in connection
with a default, which does not expose Lessor to criminal
liability, not susceptible of being cured with due
diligence and in good faith within twenty (20) days
that the time of Lessee within which to cure the same
shall be extended for such a period as may be necessary
for the curing with due diligence and in good faith);
and

          (d)   if the Secretary of Banking takes possession
of Lessee's assets without further possibility of appeal
or review;

then and in any such event Lessor at any time thereafter during
the continuance of any such Event of Default may at its option
give written notice to Lessee specifying such Event of Default
or Events of Default and stating that this Lease and the term
hereby demised shall expire and terminate on the date specified
in such notice, which shall be at least ten (10) days after
the giving of such notice, and upon the date specified in such
notice, this Lease and the term hereby demised and all rights
of Lessee under this Lease shall expire and terminate.

          Section 18.02.   Upon any expiration or termination
of this Lease, Lessee shall quit and peacefully surrender the
Demised Premises (in the manner and upon the terms and conditions
set forth in Section 15.03 hereof) to Lessor, and Lessor upon
or at any time after any such expiration or termination, may
without further notice, enter upon and re-enter the Demised
Premises and possess and repossess itself thereof, by force,
summary proceedings, ejectment or otherwise, and may dispossess
Lessee and remove Lessee and all other persons and property
from the Demised Premises and may have, hold and enjoy the Demised
Premises and the right to receive all rental income of and from
the same.

          Section 18.03.   At any time or from time to time after
any such expiration or termination, Lessor may relet the Demised
Premises or any part thereof, in the name of Lessor or otherwise,
for such term or terms (which may be greater or less than the
period which would otherwise have constituted the balance of
the term of this Lease) and on such conditions (which may include
concessions or free rent) as Lessor, in its uncontrolled discretion,
may determine and may collect and receive the rents therefor.
Lessor shall in no way be responsible or liable for any failure
to relet the Demised Premises or any part thereof, or for any
failure to collect any rent due upon any such reletting.

          Section 18.04.   No such expiration or termination
of this Lease shall relieve Lessee of its liabilities and obliga-
tions under this Lease, and such liabilities and obligations
shall survive any such expiration or termination.   In the event
of any such expiration or termination, whether or not the Demised
Premises or any part thereof shall have been relet, Lessee shall
pay to the Lessor a sum equal to the net rent in effect at the
date of termination and the additional rent required to be paid
by Lessee up to the time of such expiration or termination of
this Lease, and thereafter Lessee, until the end of what would
have been the term of this Lease in the absence of such expiration

or termination, shall be liable to Lessor for, and shall pay to Lessor, as and for liquidated and agreed current damages for Lessee's default

(a)   the equivalent of the amount of such net rent and the additional rent which would be payable under this Lease by Lessee if this Lease were still in effect, less

(b)   the net proceeds of any reletting effected pursuant to the provisions of Section 18.03 hereof, after deducting all Lessor's expenses in connection with such reletting, including, without limitation, all repossession cost, brokerage commissions, legal expenses, reasonable attorney's fees, alteration costs, and expenses, reasonable for such reletting.

In the event of the occurrence of any Event of Default as defined in 18.01 hereof, then the rent for the entire unexpired balance of the term of this Lease, as well as all other charges, payments, costs and expenses herein agreed to be paid by the Lessee, or at the option of Lessor any part thereof, and including the five percent chargeable by Act of Assembly to the Lessor, shall, in addition to any and all installments of rent already due and payable and in arrears and/or any other charge or payment herein reserved, included or agreed to be treated or collected as rent, and/or any other charge, expense or cost herein agreed to be paid by the Lessee which may be due and payable and in arrears, be taken to be due and payable and in arrears as if by the terms and provisions of this Lease, the whole balance of unpaid rent and other charges, payments, taxes, costs and expenses were on that date payable in advance; and if this Lease or any part thereof is assigned, or if the premises or any part thereof is sub-let, Lessee hereby irrevocably constitutes and appoints Lessor Lessee's agent to collect the rents due by such assignee or sub-lessee and apply the same to the rent due hereunder without in any way affecting Lessee's obligation to pay any unpaid balance of rent due hereunder.

Nothing herein contained shall limit or prejudice the right of the Lessor to prove for and obtain as damages by reason of such expiration or termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

Section 18.05.  Lessee hereby expressly waives, so far as permitted by law, the service of any notice of intention to enter or re-enter provided for in any statute, or of the institution of legal proceedings to that end, and Lessee, for and on behalf of itself and all persons claiming through or under Lessee also waives any and all right of redemption or re-entry or re-possession or to restore the operation of this Lease in case Lessee shall be dispossessed by a judgment or by warrant of any court or judge or in case of entry, re-entry or re-possession by Lessor or in case of any expiration or termination of this Lease.  Lessor and Lessee, so far as permitted by law, hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Lessor and Lessee, Lessee's use of occupancy of said Premises or any claim of injury or damage.  The terms "enter", "re-enter", "entry" or "re-entry",

- 23 -

as used in this Lease are not restricted to their technical legal meaning.

Section 18.06.  No failure by Lessor or by Lessee to insist upon the strict performance of any term, covenant, agreement, provision, condition or limitation of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance by the Lessor of full or partial rent during the continuance of any such breach, shall constitute a waiver of any such breach or of such term, covenant, agreement, provision, condition or limitation.  No term, covenant, agreement, provision, condition or limitation of this Lease to be kept, observed or performed by Lessor or by Lessee, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Lessor or by Lessee, as the case may be.  No waiver of any breach shall affect or alter this Lease, but each and every term, covenant, agreement, provision, condition and limitation of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

Section 18.07.  Subject to the provisions of Section 6.03 of this Lease, in the event of any breach by Lessee of any of the terms, covenants, agreements, provisions, conditions or limitations contained in this Lease, Lessor shall be entitled to enjoin such breach and shall have the right to invoke any right or remedy allowed at law or in equity or by statute or otherwise as though entry, re-entry, summary proceedings, and other remedies were not provided for in this Lease.

Section 18.08.  Each right or remedy of Lessor provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or the beginning of the exercise by Lessor of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Lessor of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

Section 18.09.  Lessor shall not have the right to levy or distrain upon the property of customers of Lessee and depositors.

ARTICLE 19

INVALIDITY OF PARTICULAR PROVISIONS

Section 19.01.  If any provisions of this Lease or the application thereof to any person or situation shall, to any extent, be held invalid or unenforceable, the remainder of this Lease, and the application of such provision to persons or situations other than those as to which it shall have been held valid or unenforceable, shall not be affected thereby, and shall continue valid and be enforced to the fullest extent permitted by law.

— 24 —

ARTICLE 20

NOTICES

Section 20.01.  All notices, demands or requests by
Lessor to Lessee shall be deemed to have been properly served
or given if sent by United States registered or certified mail,
return receipt requested, postage prepaid, addressed to Lessee
to the attention of Community Banking Division, Real Estate
Officer, Girard Bank, Broad and Chestnut Streets, Philadelphia,
Pennsylvania, 19101, or to such other address within the continental
limits of the United States and to the attention of such other
party as Lessee may from time to time designate by written notice
to Lessor.  All notices, demands or requests by Lessee to Lessor
or by any party to Lessor shall be deemed to have been properly
served or given if sent by United States registered or certified
mail, return receipt requested, postage prepaid addressed to
Lessor, 2330 Sansom Street, Philadelphia, Pennsylvania, or to
such other address within the continental limits of the United
States and to the attention of such party as Lessor may from
time to time designate by written notice to Lessee.

ARTICLE 21

CONDITION OF AND TITLE TO DEMISED PREMISES

Section 21.01.  Lessee represents that the Demised
Premises, the title thereto, the possession and occupancy thereof,
the sidewalks and structures adjoining the same, any surface
and any subsurface conditions thereof, and the present uses
and non-uses thereof, have been examined by Lessee and that
Lessee accepts the same in the condition or state in which they
now are, or any of them now is, without representation, covenant
or warranty, express or implied, in fact or in law, by Lessor
and without recourse to Lessor, as to the title thereto, possession
or occupancy thereof and encumbrances thereon, appurtenances,
the nature, condition or usability thereof or the use or uses
to which the Demised Premises or any part thereof may be put.

ARTICLE 22

QUIET ENJOYMENT--CONVEYANCE BY LESSOR

Section 22.01.  Lessee, upon paying the net rent and
all additional rent herein provided, for an keeping, observing
and performing all the terms, covenants, agreements, provisions,
conditions and limitations of this Lease on Lessee's part to
be kept, observed and performed, shall quietly have and enjoy
the Demised Premises during the term of this Lease without hindrance
or molestation by anyone lawfully claiming by, or through Lessor,
subject, however, to the exceptions, reservations and conditions
of this Lease.

Section. 22.02  In the event Lessor herein or any
successor owner of the Demised Premises shall convey or otherwise
dispose of the Demised Premises, then, upon the transfer of
any insurance policies, and other monies or any other securities
belonging to Lessee held by Lessor pursuant to the provisions
of this Lease, to any such purchaser of the Demised Premises,
all liabilities and obligations on the part of Lessor or successor
owner as Lessor under this Lease, accruing after such conveyance
or disposal, shall cease and terminate and each successor purchaser
of the Demised Premises shall, without further agreement, be
bound by Lessor's covenants and obligations but only during
the period of such ownership respectively.  Nothing herein contained
shall be construed to release Lessor or any sucessor owner as

Lessor from any liability or obligation which otherwise matured
prior to the effective date of such conveyance or disposal.

ARTICLE 23

DEFINITION OF CERTAIN TERMS, ETC.

Section 23.01.  For Purposes of this Lease, unless
the context otherwise requires:

(a)  The term "Demised Premises" shall be defined
as set forth in Article 1 hereof.

(b)  The term "Lessor" shall mean Landlord, these
terms being mutually interchangeable, and shall also
mean only the owner for the time being of the Demised
Premises.

(c)  The term "Lessee" shall mean Tenant, these
terms being mutually interchangeable, and shall mean
any party in possession of the Demised Premises, either
physically or in legal effect, pursuant to the terms
of this Lease and shall be deemed to include the plural.

(d)  The term "Lease" shall mean this Lease and
the leasehold estate created thereby.

(e)  The term "sublease" shall mean any lease
or occupancy of the Building or any part thereof other
than this Lease and the term "Sublessee" or "sublessee"
shall mean a tenant or occupant to a sublease.

(f)  The term "Fee Mortgage" shall mean a mortgage
on the Demised Premises, and the term "Fee Mortgagee"
shall mean any holder of such Fee Mortgage and the
successors or assigns thereof.

(g)  The term "unavoidable delays" shall mean
unforeseen delays due to strikes, acts of God, unavail-
ability of labor or materials, enemy action, civil
commotion, governmental restrictions relating thereto,
fire, unavoidable casualty or similar causes beyond
the reasonable control of Lessee.

Section 23.02.  The captions of this Lease are for
convenience and reference only and in no way define, limit or
describe the scope or intent of this Lease nor in any way affect
this Lease.

Section 23.03.  The table of contents preceding this
Lease but under the same cover is for the purpose of convenience
and reference only and is not to be deemed or construed in any
way as part of this Lease, nor as supplemental thereto, or amenda-
tory thereof.

Section 23.04.  This Lease shall be construed and
enforced in accordance with the laws of the Commonwealth of
Pennsylvania.

- 26 -

CERTIFICATES BY LESSOR AND LESSEE

Section 24.01.  Either party agrees at any time and from time to time upon not less than twenty (20) days' prior notice by the other party to execute, acknowledge and deliver the other party a statement in writing certifying that this [lease] is unmodified and in full force and effect (or if there have been modifications, that the Lease is in full force and effect as modified and stating the modifications), and the dates to which the net rent and the additional rent have been paid, and stating whether or not the other party is in default in keeping, observing or performing any term, covenant, agreement, provision, condition or limitation contained in this Lease and, if in default, specifying each such default, it being intended that any such statement delivered pursuant to this Section 24.01 may be relied upon by the other party or any prospective purchaser of the Fee or any Mortgagee thereof or any assignee of any Mortgagee upon the Fee of the Demised Premises or any proposed purchaser of the leasehold.

ARTICLE 25

SUBORDINATION

Section 25.01.  Lessee hereby subordinates its interest in the Demised Premises under this Lease to any mortgage or deed of trust now or hereafter created by Lessor upon the Demised Premises or upon the building of which the same are a part. Lessee will, at any time upon request of Lessor, execute for recording an agreement, of which a copy shall be delivered to Lessee, further evidencing the subordination herein made.  Lessee's subordination is upon condition that the possession of Lessee will not be disturbed and this Lease will not terminate so long as Lessee is not in default hereunder.  Lessor agrees to obtain a non-disturbance agreement insuring Lessee's quiet possession from every holder of a mortgage on the Demised Premises.

ARTICLE 26

RECORDING

Section 26.01.  The parties will at any time at the request of either one, promptly execute duplicate originals of an instrument, in recordable form, which will constitute a short form of Lease setting forth a description of the premises, the term of this Lease and any other portions hereof, except the rental provisions, as either party may request.

IN WITNESS WHEREOF, The Lessor and Lessee have each caused this Lease to be duly executed the day and year first above written.

[corporate seal]                      GIRARD TRUST BANK

Attest: _____       BY: _____
                 Ass't Treas.              Vice President

_____               _____ (SEAL)
                 Ass't Sec.

- 27 -

## ASSIGNMENT AND ASSUMPTION OF LEASES

ASSIGNMENT AND ASSUMPTION OF LEASES ("Assignment"), dated as of _December 1_, 2001, between MELLON BANK, N.A., a national banking association ("Assignor") and CITIZENS BANK OF PENNSYLVANIA, a bank chartered under the laws of the Commonwealth of Pennsylvania ("Assignee").

For good and valuable consideration, the adequacy and receipt of which are hereby acknowledged by Assignor, and for the purpose of effecting the sale, conveyance and transfer by Assignor to Assignee of all Assignor's right, title and interest in and to all those certain leases, agreements, and other documents described on Exhibit A hereto (collectively, the "Leases"), and intending to be legally bound hereby, Assignor and Assignee agree as follows:

1. <u>Assignment by Assignor</u>.  Assignor hereby sells, assigns, transfers, sets over and delivers to Assignee all of Assignor's right, title and interest, as tenant or otherwise, in, to and under the Leases, and all Assignor's right, title and interest, whether written or oral, and claim in, to and under the Leases, together with all rights, powers, privileges, options and other benefits of Assignor under the Leases.

2. <u>Assumption by Assignee</u>.  Assignee hereby assumes all the obligations and agrees to perform and comply with all the terms and provisions of the Leases to the extent arising and to be performed and complied with by Assignor from and after the date hereof.

3. <u>Further Assurances</u>.  Assignor hereby covenants that Assignor will, at any time and from time to time upon written request therefor, execute and deliver to Assignee such documents as Assignee may reasonably request in order to fully assign and transfer to and vest in Assignee and protect Assignee's right, title and interest in and to the Leases and the rights, powers, privileges, options and other benefits of Assignor intended to be transferred and assigned hereby, or to enable Assignee to realize upon or otherwise enjoy such rights, powers, privileges, options and other benefits in and to the Leases.

4. <u>Representations and Warranties</u>.  Assignor represents and warrants that it is the tenant under the Leases.  Assignor shall indemnify Assignee for any breach of the foregoing representation and warranty only in the manner and subject to the limitations for indemnification for breach of representation or warranty set forth in Article XV of the Purchase of Assets and Liability Assumption Agreement dated as of July 16, 2001 between Mellon Financial Corporation and Citizens Financial Group, Inc. (the "Purchase Agreement").  Except as set forth in the first sentence of this Section 4 and to the extent, if any, set forth in the Purchase Agreement, Assignor makes absolutely no representations or warranties, express or implied, with respect to the Leases.

5. <u>Power of Attorney</u>.  Assignor hereby constitutes and irrevocably appoints Assignee, its successors and assigns, the true and lawful attorney of Assignor, coupled with an interest, with full power of substitution, for the benefit and at the expense of Assignee, to institute and prosecute all proceedings which Assignee may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Leases assigned hereunder, to defend or compromise any and all actions, suits or proceedings in respect of the Leases, and to do all such acts and things in relation thereto as Assignee shall deem advisable at Assignee's sole cost, risk and expense.  Assignor acknowledges that the foregoing powers are coupled with an interest and shall be irrevocable by Assignor in any manner or for any reason.  Assignee shall be entitled to retain for its own account all sums collected pursuant to the foregoing powers.

6.  <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and any party hereto may execute this Assignment by signing any such counterpart.

7.  <u>Successors and Assigns</u>.  This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

8.  <u>Governing Law</u>.  This Assignment, with respect to each of the Leases, shall be governed by and construed in accordance with the laws of the State of Delaware.

9.  <u>Consistent Provisions</u>.  Notwithstanding any other assignment agreement or any other document, including without limitation, any consent or guaranty, which Assignor and/or Assignee or any of their affiliates, may have entered into with or for the benefit of any third party, or any estoppel certificate from a third party for the benefit of Assignor or Assignee, in connection with the sale, conveyance and transfer of any of the Leases from Assignor to Assignee, Assignor and Assignee agree that, as between Assignor and Assignee, the terms and provisions of this Assignment and the Purchase Agreement shall govern and control the rights, obligations and liabilities of Assignor and Assignee with respect to the Leases, and, as between Assignor and Assignee, no such other assignment agreement or document shall enlarge or diminish the rights, obligations and liabilities of Assignor and Assignee with respect to the Leases as set forth in this Assignment and the Purchase Agreement.

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be executed as of the day and year first above written.

MELLON BANK, N.A.

By: _Diane K Reutzel_

Title:   Diane Reutzel
Authorized Representative

CITIZENS BANK OF PENNSYLVANIA

By: _Wm Hunderlofer_

Title: _SVP_

-2-

PSFS (PA)
Germantown
L-235

## EXHIBIT "A"

     That certain Lease dated 12/01/1971 by Nancy Realty Company, as landlord and Mellon Bank, N.A. (successor),, as tenant covering space known as 5500 Germantown Avenue, Philadelphia, PA.

PCHUB-0#65252.01-DLRUSON#
December 13, 2001  12:16PM